IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL F. ZELL

    Plaintiff

    v.      Civil No. **PJM 09-1922**

**MICHAEL B. DONLEY, et al.**

    Defendants

## **MEMORANDUM OPINION**

Paul F. Zell has sued Michael B. Donley, the United States Air Force (collectively, "the Federal Defendants"), and The Healing Staff, Inc. ("THS"), alleging claims of religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Religious Freedom Restoration Act ("RFRA"). On March 31, 2010, the Court held a hearing and issued an oral opinion denying THS's Motion to Dismiss [Paper No. 14] in its entirety, and denying the Federal Defendants' Motion to Dismiss [Paper No. 23] as to Zell's RFRA claim. The Court deferred on the Federal Defendants' Motion to Dismiss as to Zell's Title VII claims and instructed Zell and the Federal Defendants to provide "further briefing on the issue of whether Plaintiff may argue equitable estoppel with respect to the time limits for initiating an administrative claim."

The parties have now submitted, and the Court has considered, the requested supplemental briefing. For the reasons that follow, the Federal Defendants' Motion to Dismiss Zell's Title VII claims is **DENIED**.

## I.

THS is a nationwide healthcare professionals staffing firm. Donley is the Secretary of the United States Air Force ("USAF"), which owns and operates Malcolm Grow Medical Center ("Malcolm Grow") at Andrews Air Force Base in Prince George's County, Maryland. THS provides healthcare staffing at Malcolm Grow pursuant to a contract with the USAF. Zell began work at Malcolm Grow as a chiropractor in October 2003 through a contracting firm called Aliron International, Inc. ("Aliron"). When THS replaced Aliron as the contractor for chiropractic services at Malcolm Grow in 2007, it recommended, based on the recommendations of USAF personnel, that the USAF continue to employ Zell as a chiropractor. The USAF did so.

While working at Malcolm Grow, Zell sought and sometimes received religious exemptions from vaccination requirements based on his belief that "God does not intend for human beings to put toxic substances such as vaccines in their bodies." Complaint at ¶ 12. Zell alleges, for example, that he sought and received religious waivers from being vaccinated for Hepatitis B on August 4, 2004 and again on October 26, 2007. In the past, Zell has also sought and received religious exemptions to vaccinations required by Virginia public schools for each of his three children.

In the fall of 2007, the USAF informed Zell that he was required to receive a vaccination for tetanus, diphtheria, and acellular pertussis (the "Tdap vaccination"). Zell refused to be vaccinated and requested that Colonel Dorothy Hogg, Commander of the 79th Medical Operations Squadron at Malcolm Grow, grant him a religious waiver from the Tdap vaccination requirement. Colonel Hogg refused to grant the waiver. Zell also sought a religious waiver from THS, which denied the waiver on the basis that its contract with the USAF did not allow it to grant the waiver.

On March 3, 2008, approximately six months after Zell refused the Tdap vaccination, THS notified him that his employment would be terminated effective April 3, 2008. A March 11, 2008 letter from THS to Zell stated that the "reason for the termination is that our contract with [USAF] requires all of our employees to complete the immunizations outlined in the contract."

After learning that his employment would be terminated, Zell contacted several USAF officials, including Major General Gar Graham, Lieutenant Colonel Kimberly Schmidt, and Chief Master Sergeant Daryl Hanf, in an attempt to receive a religious exemption and retain his job, but these individuals either failed to respond or simply referred Zell to Colonel Hogg, who had already refused his request. None of these officials directed Zell to the Air Force Equal Employment Opportunity Office ("Air Force EEO Office") or advised him of the availability of procedures within that office.

Zell then contacted Alan Phillips, an attorney in North Carolina, regarding his case. In a phone call with Zell on March 18, 2008, Phillips agreed to write a letter on Zell's behalf setting forth the legal basis in support of his claim for a religious waiver, but Phillips informed Zell that, regardless of the response to the letter, he would be unable to do anything else on Zell's behalf. On March 25, 2008, Phillips sent the letter on Zell's behalf to THS and the USAF.

On March 28, 2008, Zell received an email from Colonel Hogg, stating that she had received the letter and that she had sought legal advice from the USAF. The email further stated, "Because we are not your employer, the contractor is, this needs to be handled between you and the contractor. As stated before, you are not meeting our contract requirements. This is not discrimination against you since the contractor is free to reassign you to another facility."

On April 1, 2008, Zell received a copy of a letter addressed to attorney Phillips from Captain Sarah D. Carpenter, Medical Law Consultant, at Malcolm Grow. The letter again stated

that "Malcolm Grow Medical Center is not Dr. Zell's employer; rather, Malcolm Grow is merely the location where Dr. Zell carries out the contractual duties of his employment. Our records show that Dr. Zell is employed by [THS] of San Antonio, Texas. Any concerns regarding Dr. Zell's employment should be addressed directly with them." Upon receipt of this letter, Zell again engaged Phillips in a brief phone conversation in which Philips reiterated that he could do nothing more on Zell's behalf. Phillips never directed Zell to either the Air Force EEO Office or to the Equal Employment Opportunity Commission ("EEOC") complaint process.

On April 10, 2008, one week following his termination, Zell went to the EEOC field office in Washington, D.C. to initiate an employment discrimination claim against THS. He alleges that in his initial intake questionnaire he did not list the USAF as discriminating against him because, based on the email he received from Colonel Hogg and the letter he received from Captain Carpenter, he did not believe the USAF was his employer. On July 9, 2009, Zell received a Notice of Right to Sue regarding his charge against THS.

Meanwhile, on or about December 9, 2008, after Zell's current attorney became aware of facts that supported the conclusion that the USAF might be Zell's joint employer (despite the representations of Colonel Hogg and Captain Carpenter to the contrary), Zell initiated contact with a counselor at the Air Force EEO Office. When the Air Force EEO Office was unable to resolve his complaint informally, on March 10, 2009 Zell filed a formal charge of discrimination against the USAF.

In April of 2009, Zell received two separate letters from the Air Force EEO Office, indicating that his complaint of discrimination had been dismissed because: (1) "[a]s an independent contractor you do not fall within the protected class of persons in Section 717(a) of Title VII," and (2) "your complaint is also dismissed for being untimely." This suit followed.

**II.**

In his Supplementary Memorandum, Zell argues that: (1) he is entitled to an equitable extension of the 45-day deadline for contacting the Air Force EEO Office following the denial of his request for religious accommodation because he reasonably relied on misrepresentations made by USAF personnel; (2) he is entitled to a mandatory extension because he was not notified or otherwise aware of the 45-day time limit; and (3) he was not required to exhaust his administrative remedies because doing so would have been futile.

The Federal Defendants respond that the only issue left to decide, per the Court's March 31, 2010 Order, is whether the Air Force EEO Office's 45-day deadline should be extended pursuant to the doctrine of equitable estoppel, and that the Court should not address Zell's additional arguments as to whether an extension is mandatory or that exhaustion of administrative remedies would be futile. Furthermore, say the Federal Defendants: (1) the Fourth Circuit applies a stricter standard for equitable estoppel when it is sought against the Government; (2) Zell's claim of equitable estoppel was extinguished when he retained counsel; (3) equitable estoppel is not available because Colonel Hogg did not engage in intentional or deliberate misconduct; and (4) Zell's "new" claim of futility is without merit.

**III.**

The Court agrees with the Federal Defendants that the only issue left to be determined, per the Court's March 31, 2010 Order, is whether Zell is entitled to an equitable extension of the Air Force EEO Office's 45-day deadline, whether by equitable tolling or equitable estoppel. Accordingly, the Court need not address Zell's arguments that he is entitled to a mandatory extension of the 45-day deadline and that he should be excused from exhausting his administrative remedies because having to do so would be futile.

The Federal Defendants argue that there is no claim of equitable tolling to address because the Court's March 31, 2010 Order required further briefing solely as to the application of equitable estoppel and not as to equitable tolling. It is true that the Court's Order only explicitly requested further briefing from the parties as to the doctrine of equitable estoppel. However, the Federal Defendants give the Order a cramped reading. Zell's failure to act within the 45-day time limit in this case implicates aspects of both equitable estoppel and equitable tolling, so it is not surprising, based on the similarities between the two concepts, that Zell has addressed the possible applicability of both in his further briefing. In any event, the Federal Defendants have had a full opportunity to review, and have in fact responded to, Zell's arguments as to both doctrines. The Court therefore considers both doctrines in play.

A.

The 45-day time limit to contact an EEO Counselor is "subject to waiver, estoppel and equitable tolling." 29 C.F.R. § 1614.604(c). "The doctrines of equitable tolling and equitable estoppel . . . are based primarily on the view that a defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987). However, these equitable exceptions should be applied sparingly, as the certainty that statutes of limitations provide "will be lost if their application is up for grabs in every case." *Id*.

In order to apply the doctrine of equitable tolling, the plaintiff must "show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge." *Id*. (citing *Lawson v. Burlington Indus.*, 683 F.2d 862, 864 (4th Cir. 1982)).

Equitable estoppel is properly invoked in a slightly different situation: "where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline." *English*, 828 F.2d at 1049 (citing *Felty v. Graves-Humphreys*, 818 F.2d 1126 (4th Cir. 1987)).

Applying either doctrine, before there can be tolling or estoppel, the employee's failure to file a timely complaint must be the result of "actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 201 (4th Cir. 1990) (equitable tolling); *Price v. Litton Bus. Sys.*, 694 F.2d 963, 965 (4th Cir. 1982) (equitable estoppel). Therefore, where the Plaintiff has been "induced or tricked . . . into allowing [a] a filing deadline to pass," and has not simply "failed to exercise due diligence in preserving [his] legal rights," equitable extension of a filing deadline is appropriate. *Weick v. O'Keefe*, 26 F.3d 467, 470-71 (4th Cir. 1994) (applying the doctrine of equitable tolling); *see also Lane v. Wal-Mart Stores East, Inc.*, 69 F. Supp. 2d 749, 754 (D. Md. 1999) (noting that "[t]he Fourth Circuit has appreciated that a plaintiff's excusable ignorance could result from reasonable reliance on incorrect information provided by a federal agency").

**B.**

The Court considers first the doctrine of equitable tolling.

Zell states that that he has adequately alleged a factual basis for equitable tolling because Colonel Hogg and Captain Carpenter misled him when they informed him that the USAF was not his employer and that he should direct any inquiries related to his termination only to THS. He cites the March 28, 2008 email in which Colonel Hogg told Zell that "[b]ecause we are not your employer, the contractor is, this needs to be handled between you and the contractor. As

stated before, you are not meeting our contract requirements. This is not discrimination against you since the contractor is free to reassign you to another facility."

Responding to Alan Phillips, the North Carolina lawyer who sent a letter to the USAF on Zell's behalf, Captain Carpenter reiterated the USAF position: "Malcolm Grow Medical Center is not Dr. Zell's employer; rather, Malcolm Grow is merely the location where Dr. Zell carries out the contractual duties of his employment. Our records show that Dr. Zell is employed by [THS] of San Antonio, Texas. Any concerns regarding Dr. Zell's employment should be addressed directly with them."

Relying on these representations, says Zell, he initiated contact with the EEOC only one week later, but failed to mention the USAF in his EEOC intake questionnaire, since he did not believe them to be his employer.

**(1)**

The Federal Defendants argue that equitable tolling is precluded because Zell was represented by counsel, which extinguishes any equitable basis for tolling a limitations period. *See English*, 828 F.2d at 1049 (holding that, even "[i]f an employer violates the posting requirement, the charging period is tolled until the plaintiff acquires actual knowledge of his rights *or retains an attorney*.") (emphasis added).

Zell suggests that the case law does not support the application of such a rigid rule. Rather, he says, the determination of whether an equitable extension is available requires a factually intensive examination of the "totality of the circumstances." *United States ex rel. J. Bobby Currin & Sons v. J & W Builders, Inc.*, 17 F. Supp. 2d 462, 465 (M.D.N.C. 1996). Accordingly, Zell continues, retention of counsel is merely one factor in that calculus. *See U.S. for Use and Benefit of Humble Oil & Refining Co. v. Fidelity & Cas. Co. of N.Y., et al.*, 402 F.2d

893, 899-900 (4th Cir. 1968) ("Nor do we consider the fact that [plaintiff] had counsel some two-and-one-half months before limitations had run, a necessary bar to its right to invoke estoppel. The cases are legion where estoppel was successfully pleaded even though a party was represented by counsel.").

The Court agrees that contact with an attorney does not automatically result in a bar to application of the doctrine of equitable tolling. The Federal Defendants rightly point out that whether a plaintiff is represented by counsel is an important factor to consider. Nonetheless, the Fourth Circuit's holding in *Humble Oil* makes clear that the mere presence of counsel does not serve as a complete bar to the equitable extension of filing deadlines. *See Humble Oil*, 402 F.3d at 899-900; *see also Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307-08 (3rd Cir. 1983) (permitting "consultation with counsel to negate an allegation of employer deception . . . would be both strikingly inconsistent with the purposes of the antidiscrimination statutes and completely devoid of common sense").[1]

**(2)**

The Court turns to the question of whether equitable tolling is appropriate under the particular circumstances of this case. The Fourth Circuit has held that equitable tolling is proper where "an employee's failure to timely file results from either a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Olson*, 904 F.2d at 201. That is, the plaintiff must have been "induced or tricked" into letting the applicable deadline pass, as opposed to merely

---

[1] The Court further notes that all but one of the cases cited by the Federal Defendants in support of the proposition that equitable tolling is precluded if the plaintiff was represented by counsel were decisions rendered on summary judgment with the benefit of a full record. Here, the Court considers the issue based on the Federal Defendants' Motion to Dismiss, where the Court is obliged to accept Zell's allegations as true.

"fail[ing] to exercise due diligence in preserving [his] legal rights." *Weick,* 26 F.3d at 470-71 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)).

The Court finds that equitable tolling of the 45-day time limit for Zell to have contacted the Air Force EEO Office is appropriate. Colonel Hogg and Captain Carpenter's clear and unambiguous statements to Zell that THS, not the USAF, was his employer, and that any further inquiries regarding his employment should be directed solely to THS, constitute actions that the USAF clearly should have understood would cause Zell to delay contacting the Air Force EEO Office. Indeed, the very purpose of Colonel Hogg and Captain Carpenter's communications with Zell was to advise him that he <u>should not</u> contact an Air Force EEO Counselor, but instead should direct his employment-related concerns to THS. Zell may not have been "tricked" into letting the applicable deadline pass as to the USAF, but he was unquestionably "induced" to do so.

Nor did Zell fail to exercise due diligence in seeking to preserve his legal rights. On the contrary, he contacted the EEOC and initiated a charge as to THS just one week after being advised by Colonel Hogg and Captain Carpenter that the USAF was the wrong forum for his complaint.

Indeed, it comes with something of ill grace for the USAF to argue now for dismissal of Zell's claims on the basis of untimeliness when, after Zell raised his concerns with his USAF supervisors, they explicitly advised him that he should direct his protestations elsewhere. *See Lane*, 69 F. Supp. 2d at 754 (applying the doctrine of equitable tolling where the plaintiff's late filing was a result of incorrect information provided by a government agency).

The fact that Zell had contact with an attorney does not alter the Court's conclusion. Zell's relationship with attorney Phillips, who was not an employment lawyer, was extremely

limited. Phillips's sole engagement was to draft a single letter on Zell's behalf, a letter which in no way suggested, as far as the USAF was concerned, an intention to file a complaint, pursue EEO counseling, or engage in any form of EEO process. Phillips explicitly stated to Zell that he would not be able to provide any further representation to Zell, regardless of how THS or the USAF responded to the letter. Zell was essentially left to his own devices.

The Court holds that the time for Zell to report his Title VII claims to the Air Force EEO Office was equitably tolled, and that his presentation of those claims in this Court was therefore timely.

## C.

Zell also contends that the doctrine of equitable estoppel should apply. The Federal Defendants respond that: (1) there is a heightened standard for seeking equitable estoppel against the Federal Government; (2) equitable estoppel, like equitable tolling, is not available where the plaintiff is represented by an attorney; and (3) Colonel Hogg did not engage in intentional or deliberate misconduct.

### (1)

The Federal Defendants cite the Fourth Circuit's decision in *Austin v. Winter* for the proposition that the doctrine of equitable estoppel "differ[s] . . . when the party to be estopped is the federal government." 286 F. App'x 31, 38 (4th Cir. 2008). In addition to the traditional elements, "a party must show 'affirmative misconduct by government agents.'" *Id*. "The standard for showing affirmative misconduct is rigorous." *Id*. (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422 (1990) ("[W]e have reversed every finding of estoppel [against the Federal Government] that we have reviewed.")).

Zell asks the Court to disregard the Fourth Circuit's holding in *Austin*, arguing that the same standard pertaining to estoppel in Title VII cases applies to both private employers and the Federal Government. He relies on *Irwin v. Department of Veterans Affairs*, where the Supreme Court held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." 498 U.S. 89, 95-96 (1990); *see also Scarborough v. Principi*, 541 U.S. 401, 420-21 (2004) ("[L]imitations principles should generally apply to the Government in the same way that they apply to private parties."). Although *Austin* was a Title VII case, Zell says that its holding should be ignored because the Fourth Circuit failed to cite or discuss the Supreme Court's decision in *Irwin*, which would seem to foreclose the application of a more rigorous standard for estoppel as to the Federal Government in the Title VII context.

The Court acknowledges that there is obviously some tension between the Supreme Court's decision in *Irwin* and the Fourth Circuit's language in *Austin*. However, since the Court has already held that the doctrine of equitable tolling should apply in this case, there is no need to try to harmonize the Fourth Circuit and Supreme Court decisions with respect to the applicability of equitable estoppel against the Government.

**IV.**

For the foregoing reasons, the Federal Defendants' Motion to Dismiss Zell's Title VII claims is **DENIED**.

A separate Order will **ISSUE**.

___/s/___
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**September 22, 2010**